GEO. GANZ, Appellant, v. MATHIAS WEISENBERGER, Respondent.

Kansas City Court of Appeals, April 6, 1896.

1. **Bills and Notes:** INCEPTION IN FRAUD: EVIDENCE. The evidence in this case is reviewed and it is *held* that the note in suit had its inception in fraud and duress.

2. ———: ———: ———: NOTICE. On a further review of the evidence it was *held* that the court properly instructed the jury that plaintiff should prove that he had purchased the note in good faith and for a valuable consideration; and there is evidence tending to support the finding of the jury for the defendant.

3. ———: DURESS. Mere threat of a lawsuit will not constitute duress. The evidence in this case shows more and authorizes the finding of the jury.

4. Condonation: COMPROMISE. Signing a note under such circumstances after knowledge of the fraud is not a compromise or condonation.

*Appeal from the Atchison Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

AFFIRMED.

*Sloan, McKillop & Miles* for appellant.

(1) Said note was taken as a compromise between said defendant and said Sullivan. There was no fraud practiced on said defendant at the time of the execution of said note. He fully understood why he was executing said note. It was by him signed with his eyes open and a full knowledge of all the surroundings, and of all his rights and privileges. (2) The giving of said note by defendant, after being fully aware of all that had been said and done in the premises even, and of all surrounding circumstances, even if fraud had been practiced on him in making said first contract, waived all such fraud and the court erred in permitting evidence to go to the jury over appellant's objection of any fraud or pretended fraud between said Michael and said Sullivan and the defendant prior to the execution of said note. Cooley on Torts, p. 505; *St. John v. Hendrickson*, 81 Ind. 350; *Doherty v. Bell*, 55 Ind. 205; Bigelow on Estoppel [4 Ed.], 651. Such evidence was calculated to prejudice and confuse the jury. (3) The court erred in permitting evidence to go to the jury of any threats or duress in the

giving of said note for the reason that no duress was pleaded by or set up in defendant's answer. The fact set up in said answer falls far short of any duress, nor was there any evidence of duress. *Dausch v. Crane*, 109 Mo. 323; 6 Am. and Eng. Encyclopedia of Law, 64; *Buchanan v. Sahlein*, 9 Mo. App. 552; *Silliman v. United States*, 101 U. S. 465; *Harmon v. Harmon*, 61 Me. 227; 14 Am. Rep. 556; *Beckwith v. Frisby*, 32 Vt. 559; *State v. Sludder*, 70 N. C. 55; 4 Waite's Action and Defense, 490; 52 Mo. 170, 171; *Hall v. U. S.*, 9 Ct. of Cl. 270; *Boston, etc., Co. v. Boston*, 4 Metcalf, 181; *Higgins v. Brown*, 78 Me. 373; 5 Atl. Rep. 269; *Hilborn v. Buckham*, 7 Atl. Rep. 272. All such evidence brought a wrong issue prominently before the jury and was calculated to confuse and prejudice them against the plaintiff.

*Hunt & Bailey* for respondent.

(1) A note obtained through fraud and the fraud brought home to the assignee (as in this case), the assignee can not recover, for he is not an innocent purchaser. *Horton v. Payne*, 52 Mo. 533; *Myers v. Robinson*, 93 Mo. 114; *Cannon v. Moore*, 17 Mo. App. 92; *Hamilton v. Marks*, 63 Mo. 167; *Corning v. Leedy*, 114 Mo. App. 454; *Whaley v. Neill*, 44 Mo. 316 (strong case); *Bowman v. Metzger*, 39 Pac. Rep. 3. (2) The burden of proving the indorsement is upon the plaintiff, and he must prove it was for value. *Meyers v. Old*, 51 Mo. App. 216, and cases cited. (3) When the maker of a negotiable note proves that the instrument had its origin in fraud or was fraudulently put into circulation, it is incumbent upon the holder, before he can recover, to prove that he received it *bona fide* before maturity and for value, and without knowledge of the fraud. *Johnson v. McMurry*, 72 Mo. 287; s. c., 22 Mo. App. 179; *Bank v. Stanley*, 46 Mo.

App. 448; American Lawyer, p. 135. (4) The evidence shows that said note was obtained fraudulently; that is, obtained from defendant through fraud and misrepresentations, and without any consideration, and that plaintiff knew it had been so obtained, and that he never paid value for it. *Clough v. Holden*, 115 Mo. 353; *Redpath v. Lawrence*, 48 Mo. App. 427; *Risse v. Prunelle*, 6 Mo. App. 593; *Honeycutt v. Railroad*, 40 Mo. App. 674.

ELLISON, J.—This action is based on a negotiable promissory note for $150, the plaintiff being the indorsee thereof, alleging that he was an innocent purchaser for value before maturity. The defense was fraud in the contract on which the note was founded and duress in signing the note when it was executed, a few days after the fraudulent contract. The verdict and judgment below were for defendant.

It appears that defendant was a German farmer, living in Atchison county (near Nebraska and Iowa), who had an imperfect understanding of the English language. That one Michael went to the defendant's house and on the representation that he was tired and hungry, defendant permitted him to stay all night. He represented that he lived in Chicago, but was then engaged in putting up lightning rods, and solicited defendant, who declined. But finally, on Michael assuring defendant that it would cost him but $5 to rod his house, which sum he would take out in board, plaintiff consented to sign a contract which was read to him as being for $60, but credited by $55, leaving only $5 due. In a few days after this, Sullivan, the payee in the note sued on, drove up to defendant's house with the lightning rods and put them up. Sullivan then stated to defendant that the contract was for $450 for the house and barn, and that it was

for $150 for the house alone. Defendant told him that
the contract was for $5 for the house, and for him to
take down the rods. Defendant testified that: "He
then asked me to sign a note for $150. I told him I
would do no such thing. I just got mad. He said he
would have no more monkey around about it; that I
would have to sign the note or he would go to Chicago
and bring the United States marshal and turn me out
of house and home onto the road. Well, he scared
me. He say he get United States marshal from .
Chicago. He would turn my family out in the road if
I don't sign the note."

Defendant's daughter testified: "He told pa to
sign the note for $150; that he would have to pay $150.
He said if he didn't he would go to Chicago and get
the United States marshal and come and turn us out
of house and home. He said he would have the United
States marshal take pa to Chicago. He said he would
take our place and throw it out in the road if he did
not sign the note; and he said he would throw us out
of house and home. My mother got frightened and
told pa to sign it. She told pa he had better sign the
note, and he signed it."

We are satisfied there was ample evidence to
sustain a finding that there was such fraud and duress
in the inception of the note as would have defeated a
recovery, had Sullivan, the payee, retained it. And
the question is, was there evidence to justify or
sustain the finding that plaintiff was not an innocent
purchaser.

Since there was evidence showing that the note
originated in fraud, it devolved upon plaintiff to show
that he was an innocent purchaser for value. But we
need not dwell on where the burden of proof was,
since, in our view, to take the entire evidence relating
to plaintiff's purchase of the note, we deem it sufficient

to sustain a finding that he knew the note was not the result of an honest transaction and was not based on a valid consideration.    To express our view of the matter in other words, we would say that the evidence is not such as would justify us in overturning the verdict of the jury.    It is well recognized with us, and the other appellate courts of the state, that the jury have a right, not only to consider the direct evidence on a given point, but they may consider the circumstances proven and are at liberty to indulge in reasonable inferences to be drawn from the evidence.    There was evidence here that these parties, Michael and Sullivan, were about plaintiff's saloon in Nebraska City a great deal of the time while they were going over the country in this business, and that he knew their business was that of lightning rod men.    That they owed him $30 or $40 for liquors and cigars, which was settled in the purchase of the note.    That he inquired of a banker across in Hamburg, Iowa, as to whether the signature was genuine, before the note was indorsed to him. That the banker told him it was; but that he had better see defendant as to whether the note was right— whether he got value, and that plaintiff told him that it "did not matter to him, all that he wanted to know was that this was his (defendant's) signature."    That on one occasion, shortly before this, he went to the country with Sullivan, in the same buggy, and along with two other men, when a serious difficulty occurred in an attempt to enforce what was claimed to be a lightning rod contract with a German named Ludvick. That Ludvick claimed the contract made with Michael was for $10, while Sullivan claimed it was for $600. Ludvick and his son got out a shotgun and plaintiff left the scene.    It does not appear what was the result of the matter with Ludvick.

It is apparent from the view we have taken of the case that it was proper for the court to instruct the jury for defendant, that plaintiff should prove that he had purchased the note in good faith and for a valuable consideration.

Counsel for plaintiff cite authorities, to be found in their brief, to sustain the point they advance that notwithstanding the fraud in the contract as executed with Michael, yet when Sullivan came along in a few days after and had defendant execute the note in suit, he, defendant, knew all about the fraud and with such knowledge and in view of the dispute between him and Sullivan, he voluntarily executed the note as a compromise. But, in our opinion, the note was not voluntarily executed. It was done under duress. Plaintiff, however, contends that there was no evidence tending to prove duress. We think there was enough in the testimony which we have set out, if believed by the jury, to establish duress; and, in our opinion, it was sufficiently pleaded in the answer. It is true that it is decided that the mere threat of a lawsuit will not constitute duress. *Dausch v. Crane*, 109 Mo. 323; *Silliman v. United States*, 101 Mo. 465. But here there was much more. There was a threat to bring in the United States marshal, to turn defendant and his family out of doors, and to take defendant to Chicago. Signing the note, under these circumstances, was not a compromise or condonation of the fraud which had preceded. Other objections to the judgment are made by plaintiff, but after a careful consideration of each of them, we are satisfied that nothing has been shown which would justify us in overturning the judgment and it is accordingly affirmed. All concur.